COPPER CANYON LAW

*43 E. 1st Avenue*
*Mesa, Arizona 85210*
*Office: (480) 833-3838*
*www.coppercanyonlaw.com*
**For Court Use Only: docketing@coppercanyonlaw.com**
Thomas L. Brown (031017)
Thomas@coppercanyonlaw.com
Cameron J. Mitchell (035735)
Cameron@coppercanyonlaw.com
Kyle O'Dwyer (036095)
kodwyer@coppercanyonlaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brittany Zimmerman, an individual, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Paragon Space Development Corporation, an Arizona corporation, | |
| Defendant. | |

Plaintiff, Brittany Zimmerman, by and through undersigned counsel, hereby alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Ms. Zimmerman was at all times relevant herein a resident of Pima County, Arizona.

2.      Defendant Paragon Space Development Corporation ("Paragon") was at all times relevant herein an Arizona Corporation company and held its principal place of business in Pima County, State of Arizona.

1

3.      At all times relevant herein, Ms. Zimmerman was an employee of Paragon.

4.      All acts, agreements, and contracts hereinafter alleged were to be substantially performed, and completed in Pima County, Arizona.

5.      All the named Defendants herein, are intended to represent individuals acting either in their individual capacities, or as agents, representatives, directors, shareholders, or employees duly authorized and were acting within their employment with regards to the transactions hereinafter alleged.

6.      Jurisdiction and venue pursuant to 42 U.S.C. § 2000e-5(f)(3) are appropriate in this Court.

## GENERAL ALLEGATIONS

7.      Ms. Zimmerman is the Graduate Student of the Year (2016) in the Master of Science Space Studies program at the University of North Dakota. She is internationally recognized as a Future Space Leader and was selected as a Promise Award Recipient by the Space and Satellite Professionals International for her contributions to the industry.

8.      Ms. Zimmerman accepted an offer to join the team at Paragon on or about November 14, 2016 as an aerospace engineer.

9.      Ms. Zimmerman is an inventor of technologies that led to multiple patents for Paragon and her work had been lucrative for Paragon.

10.      In 2017, a man named Robert Parker worked as an independent contract for Paragon and frequently interacted with Ms. Zimmerman.

11.      Mr. Parker made highly degrading comments about women.  His behavior and comments escalated over time and he refused to have technical conversations with Ms.

2

Zimmerman without a male present, made statements that violence against a woman is helpful to "gain her respect", and eventually made threats of rape and physically blocked Ms. Zimmerman's escape.

12.     Mr. Parker's behaviors resulted in multiple reports to the Human Resources Department (H.R.) by Ms. Zimmerman.  In October 2017, Ms. Zimmerman had numerous conversations with Neyra Enriquez, Paragon's H.R. Manager, regarding Mr. Parker's behavior and comments.

13.     Ms. Zimmerman was shocked when H.R. advised Ms. Zimmerman that no action was necessary and suggested that with time Mr. Parker's actions may calm down.

14.     Ms. Zimmerman's one year employee review ("RER") was held on or about October 17, 2017 with Barry Finger, Chief Engineer at Paragon.

15.     Ms. Zimmerman reported directly to Barry Finger, who reported to the CEO, Grant Anderson.

16.     At this first one-year RER, Mr. Finger gave Ms. Zimmerman exceeding expectations and Mr. Finger informed Ms. Zimmerman that as a result, she would be getting a raise and promotion that had been discussed when Ms. Zimmerman agreed to work with Paragon.

17.     On or about October 20, 2017, three days after her RER and the promised promotion and raise, Ms. Zimmerman informed Mr. Finger about Mr. Parker's actions at the direction of Neyra Enriquez from the H.R. Department.

18.     Just days after Ms. Zimmerman informed Mr. Finger about Mr. Parker, Mr. Finger notified Ms. Zimmerman she would not be receiving the agreed upon and deserved

promotion and raise. Mr. Finger stated that it would be postponed and readdressed on May 1, 2018.

19.     From the time Ms. Zimmerman informed Mr. Finger of the sexual harassment from Mr. Parker on or about November 1, 2017 to the time Ms. Zimmerman stopped working at Paragon on or about December 25, 2020, the relationship with Mr. Finger changed and he created an environment that was continuously hostile and difficult for Ms. Zimmerman, including in her RERs and attempts at promotion.

20.     Mr. Parker's comments and behavior escalated.  Mr. Parker refused to have technical conversations with Ms. Zimmerman and began referring to her as the Rattlesnake. Mr. Parker continued to tell degrading statements of "women's work" and the woman's "place" in the world.

21.     Ms. Zimmerman submitted additional complaints to H.R. regarding Mr. Parker's behavior.

22.     In Early November 2017, Brittany Zimmerman asked Robert Parker to stop the behaviors, to which Robert Parker explained that he spoke with Neyra Enriquez, and if the behaviors were really a concern, she would have shown him the door.

23.     Mr. Parker openly stated on or about November 22, 2017, his plans to rape a woman, sharing that disrespect was the only way to gain a woman's respect.

24.     In late November, Brittany Zimmerman voiced her concerns yet again to Neyra Enriquez, who shared that she, Ms. Enriquez, had spoken to Mr. Parker about his behavior. Ms. Zimmerman relayed the escalation of his behavior and the ineffectiveness of

the discussion with Mr. Parker.  Ms. Enriquez assured Mr. Zimmerman that Mr. Parker's contract was coming to an end shortly.

25.    Upon information and belief, Mr. Parker's contract was again extended on or about December 1, 2017.

26.    On or about December 14, Ms. Zimmerman filed a formal complaint regarding the contract extension and continued issues with Mr. Parker to the H.R. Department, and asked for an investigation of the harassment.

27.    Paragon did not respond to Ms. Zimmerman regarding her complaint.

28.    On or about late December, Ms. Zimmerman asked for an update on the complaint.

29.    On or about January 3, 2018, Ms. Enriquez scheduled a debrief with Ms. Zimmerman on the complaint.

30.    In the first half of 2018, Mr. Parker had continued to consistently and repeatedly make comments that were derogatory, threating, and degrading towards women. Ms. Zimmerman continued to report to H.R. the significant harassment from Mr. Parker.

31.    Upon information and belief, on or about June 19, 2018, Paragon finally informed Mr. Parker that his contract would not be extended.

32.    Following this meeting, Mr. Parker went to look for Ms. Zimmerman and yelled throughout the office "Where is the stupid red headed bitch?", referring to Ms. Zimmerman, and went to her desk yelling inappropriate comments.

33.    Ms. Zimmerman left the building in attempt to get away from Mr. Parker, only to find Mr. Parker outside in the parking lot, blocking her departure.

34.     After hiding behind Paragon's dumpsters with Mr. Parker threatening to rape Ms. Zimmerman, she ran back to the building where male colleagues Mike Camarena and Sean Gellenbeck offered to escort her to her vehicle for safety.

35.     Mr. Parker continued verbally abusing Ms. Zimmerman while she was in her car. Mr. Camarena offered to ride with her to ensure her safety from Mr. Parker.  Ms. Zimmerman and Mr. Camarena had a telephone conversation with Ms. Enriquez to inform her of the events.

36.     Ms. Zimmerman sent an email to Ms. Enriquez and Mr. Barry Finger requesting permission to work from home as she did not feel safe in the office for the rest of Mr. Parker's contract.

37.     In May 2018, Ms. Zimmerman requested an RER to readdress her promotion and raise with Mr. Finger, which he never scheduled. Ms. Zimmerman did not receive the raise and promotion that had been promised the previous year.  Ms. Zimmerman would not receive the re-evaluation, promotion, or promised raise until months later.

38.     Ms. Zimmerman sent an email to Paragon leadership on or around June 26, 2018, including the chief executive officer, Grant Anderson, the chief financial officer, Joel Johnson, and chief engineer, Barry Finger highlighting the cultural decline due to leadership's inaction and tolerance of sexual harassment in the workplace.

39.     Ms. Zimmerman began aiding in and then writing proposals for Paragon.

40.     During interviewing and onboarding at Paragon, Mr. Finger had let Ms. Zimmerman know that due to her background she would be the natural fit to lead Paragon's program named IRA.

41.     However, Ms. Zimmerman's name was removed by Mr. Finger as the proposed project manager and replaced with his own name.  Mr. Finger informed Ms. Zimmerman that she would instead be the deputy project manager.

42.     Upon information and belief, Mr. Finger's actions were retaliation against Ms. Zimmerman for her earlier reports of sexual harassment in the workplace.

43.     Mr. Finger promised he would allow Ms. Zimmerman to be proposed as the project manager and principal investigator for future phases of IRA.

44.     Though Ms. Zimmerman was the deputy principal investigator, she performed in the role of the IRA principal investigator and was at times the only person leading the program.  Ms. Zimmerman would have to brief Mr. Finger on the program before customer reviews.

45.     Despite this, Ms. Zimmerman was denied by Mr. Finger the role of principal investigator on the project.

46.     In 2019, Ms. Zimmerman lead the generation of a proposal for a new NASA program she named STOOLE, and Mr. Finger begrudgingly agreed to let Ms. Zimmerman be proposed as the program manager and principal investigator.

47.     Ms. Zimmerman was selected by NASA and became Paragon's youngest PI/PM.

48.     Per Paragon process, whenever possible the proposal manager (the person who leads the generation of the proposal) is also the project manager for the proposed effort.

COPPER CANYON
LAW

7

49.     In 2019, IRA Phase II came to an end and Ms. Zimmerman was the proposal manager for the next phase of the program and fully expected to be the principal investigator as had been promised by Mr. Finger.

50.     Now in 2019, Mr. Finger repeated the behavior he showcased in 2017 and removed Ms. Zimmerman's name as the program manager and principal investigator and placed his own name as the lead, demoting Ms. Zimmerman once again to his deputy.

51.     Ms. Zimmerman expressed her concern to Mr. Finger that she had spent over 2 years acting as principal investigator of the IRA program without credit, title, nor appropriate pay for the position.

52.     Mr. Finger still kept Ms. Zimmerman listed as the deputy but promised to move her to principal investigator if the program proposal was accepted.

53.     Paragon had a new program proposal, HALO, for which Joshua Hecht was listed as Program Manager on the proposal. He was tasked with staffing the new program.

54.     Ms. Zimmerman had helped with the proposal and Mr. Hecht requested that Ms. Zimmerman take the lead technical position for the new program.

55.     Upon information and belief, Mr. Finger again acted against Ms. Zimmerman and insisted she not be given the position.

56.     Upon information and belief, it was only after Mr. Hecht's insistence that Mr. Finger said Ms. Zimmerman could be placed in the lead technical position.

57.     However, when Mr. Finger publicly announced the position, it had been split into two positions and Ms. Zimmerman had been given a lesser position.

58.     Mr. Finger repeatedly went out of his way to ensure that the positions and promotions Ms. Zimmerman had earned or were recommended by others were not given to her.

59.     Around this same time, Pat Branch, an old friend of Mr. Finger, was brought onto the HALO program and was assigned by Mr. Hecht to work under Ms. Zimmerman and Mr. Newman, the chief engineer of the program.

60.     During his first days, Mr. Branch began mocking Ms. Zimmerman's title and position in front of the team.

61.     On or about Friday, January 24th, 2020, in a management meeting, Mr. Finger and Garland Speight singled out Ms. Zimmerman and stated in front of no less than 14 other managers or leaders that Mr. Hecht should feel comfortable removing Ms. Zimmerman as the lead systems engineer if she were to make any mistakes.

62.     Mr. Finger continued to create a hostile environment for Ms. Zimmerman and would make up or change rules in order to find ways to attack Ms. Zimmerman.  Mr. Finger and Mr. Branch also worked together to publicly critique Ms. Zimmerman, even at times when she had done nothing wrong.

63.     Mr. Finger proposed that Mr. Branch be promoted into a position in the Chief Engineer's Office, a position just below Mr. Finger's, stating Mr. Branch was overqualified to work in his current position, under Ms. Zimmerman.

64.     Paragon was hiring for additional positions and Ms. Zimmerman reached out to some highly qualified candidates she knew and told them about the opportunity and to use her as a referral.

9

65.     Ms. Zimmerman recognized that none of her recommendations were getting interviews so to test if it was related to her recommendation, she had someone submit their resume and not reference her. The individual was offered an interview, although this person was less qualified than those who had not received callbacks.

66.     On or about February 5, 2020, Mr. Branch made a comment in front of several individuals, including Ms. Enriquez and other members of human resources, stating that Ms. Zimmerman only puts in recommendations for people she is sleeping with.

67.     Ms. Zimmerman looked to Ms. Enriquez for a response to Mr. Branch's crude and untruthful accusations, but upon information and belief, she took no actions in response to his comment.

68.      Upon information and belief, Mr. Finger was responsible for denying interviews to all of Ms. Zimmerman's referrals and upon information and belief did so to retaliate against Ms. Zimmerman.

69.     Ms. Zimmerman contacted her CEO, Mr. Anderson, and expressed her concerns about Mr. Finger and Mr. Speight setting her up for failure, singling her out, and promoting aggressive culture against her.

70.     Instead of addressing the retaliation and harassment against Ms. Zimmerman, Mr. Anderson asked Ms. Zimmerman to stay in the role as it was a position of envy in all of the engineering industry- lead systems engineer for the technologies that keep people alive while visiting the moon.  He expressed this would be an enormous accolade for any person's resume and important for her career aspiration.

71.     Ms. Zimmerman expressed that she would not be able to achieve success in any position under the influence of Mr. Finger or Mr. Speight.  Instead of addressing the retaliation and harassment against Ms. Zimmerman, Mr. Anderson agreed to help Ms. Zimmerman politically navigate off the HALO program.

72.     In March 2020, Ms. Zimmerman had stepped down as lead systems engineer on HALO, the highest position of her career, in order to avoid sexual discrimination and retaliation that she was experiencing on an ongoing basis.

73.     Shortly thereafter, during a vendor meeting, Ms. Zimmerman made the comment that an individual had offered her a job.  Mr. Branch responded in front of a client and Ms. Zimmerman's team, stating that he knew what kind of "job" he would offer a girl like her.

74.     Upon information and belief, a colleague who witnessed Mr. Branch harass Ms. Zimmerman filed a complaint to the company.

75.     That Friday, Ms. Zimmerman sent an email to the CEO, Mr. Anderson, letting him know about her concerns with H.R. and that she needed help filing official sexual harassment complaints against Mr. Branch.

76.     Upon information and belief, multiple employees commented on and recognized the persistent and severe harassment that Ms. Zimmerman was subject to.

77.     On April 8, 2020, it is believed that Mr. Branch stopped working at Paragon. After Mr. Branch's departure, the level of retaliation against Ms. Zimmerman by Mr. Finger and her other supervisor, Mr. Speight, the two individuals directly over Ms. Zimmerman, increased significantly.

78.     Mr. Finger and Mr. Speight repeatedly blamed Ms. Zimmerman for errors that were in no way her fault, and recognized others when Ms. Zimmerman clearly deserved the credit.   Other employees were required to correct Mr. Finger's and Mr. Speights unfair treatment of Ms. Zimmerman.

79.     On or about June 10, 2020, Ms. Zimmerman had an RER Scheduled in which Mr. Finger again misstated her contributions and accomplishments.

80.     Ms. Zimmerman informed H.R. that the management team misstated Ms. Zimmerman's accomplishments and that the misstatements were demonstrably false.

81.     Mr. Finger and Ms. Enriquez agreed to remove the untrue and malicious comments made by only Mr. Speight and remove him from the review. Mr. Finger suggested that Chad Bower be placed into the review as a replacement.

82.     Ms. Zimmerman called Ms. Enriquez asking for a revision of the RER.  Ms. Enriquez promised that the document would be revised to remove the malicious jabs from Mr. Speight and that Mr. Speight would not be allowed to attend the review.

83.     When Ms. Zimmerman attended the RER meeting, she found Mr. Speight in attendance despite assurances otherwise and she found that the RER document had not been modified as promised.  Mr. Speight had made antagonizing statements throughout the document.

84.     Ms. Zimmerman reported verifiable facts and accomplishments on her RER.

85.     The accusations and negative sentiments on Ms. Zimmerman's review made by her management were not true.  Ms. Zimmerman was able to provide documentation to refute many of the lies.

COPPER CANYON
LAW

12

86.     Mr. Finger and Mr. Speight faced no consequence for inserting lies and colluding against Ms. Zimmerman on her official company review which directly impacted Ms. Zimmerman's career and promotion.

87.     Mr. Finger refused to give Ms. Zimmerman the Exceeding Expectations level which she deserved.  This review level directly affects the amount of bonus payout.

88.     Ms. Zimmerman continued to inform the management team of the impact of their continued actions on the company morale and culture. Additionally, on or about June 18, 2020, Ms. Zimmerman sent an email to Mr. Finger, Mr. Bower, Ms. Enriquez, and Mr. Anderson outlining the cultural impact once again.

89.     On or about July 17, 2020, Mr. Finger chose not to promote Ms. Zimmerman. She was still not officially promoted into a position nor was being paid as a proposal manager and principal investigator even though she had been performing the role on paper since 2019, and without recognition since 2017.

90.     Mr. Finger continued to act against and harass Ms. Zimmerman and otherwise unfairly targeting Ms. Zimmerman.

91.     Colleague and advocate, Thomas Cognata, expressed strong support for Ms. Zimmerman's performance.

92.     Due to this support, upon information and belief, Mr. Cognata was targeted and run out of the company, an effort led by Mr. Speight.

93.     Upon information and belief, after Mr. Cognata's resignation, Mr. Finger and Mr. Speight impeded Ms. Zimmerman from getting the principal investigator positions for

COSMIC and SMARTS that Mr. Cognata had held. Ms. Zimmerman had been the deputy on those programs and was an inventor of some of the technologies.

94. During a meeting on or about August 6, 2020, Ms. Zimmerman provided numbers and facts supporting that she should be moved into the principal investigator role for the COSMIC and SMARTS programs. Mr. Finger and Mr. Speight stated their reasoning for opposing her promotion as a "gut feeling".

95. Only after the CEO, Mr. Anderson, stepped in, was Ms. Zimmerman put into the principal investigator positions.

96. Again, Mr. Finger and Mr. Speight had denied Ms. Zimmerman a position that she was the most qualified for, and others were required to override the decision.

97. On or about August 12, 2020, Ms. Zimmerman contacted CEO and mentor, Grant Anderson. Ms. Zimmerman expressed she was being pushed out of Paragon due to the oppression and targeted attacks from Mr. Finger and Mr. Speight.

98. Throughout all of this, Ms. Zimmerman continued to perform exceptionally and had proposed and won Phase II for her STOOLE program, bringing nearly $750,000 of revenue to Paragon.

99. In the last part of 2020, Mr. Finger continued his retaliatory actions against Ms. Zimmerman by constantly critiquing Ms. Zimmerman and creating extra rules or processes that only she had to follow.

100. For example, Ms. Zimmerman set up meetings with her customers that Mr. Finger repeatedly tried to cancel and claimed that required processes were not followed.

These processes had not existed prior to that time. These actions could significantly harm the relationship between Ms. Zimmerman and her customers.

101. Upon information and belief, other employees and principal investigators have not been targeted in the same way. In fact, other employees, including the chief executive officer of Paragon have acknowledged that it appears Ms. Zimmerman has been singled out by Mr. Finger and Mr. Speight.

102. Ms. Zimmerman continually asked for the promotion that she had been promised. She had been fulfilling almost all the duties of the promised position but had not received the title or compensation associated with that position.

103. Upon information and belief, the formal promotion was still being continually denied by Mr. Finger and Mr. Speight.

104. On or about September 22, 2020, Ms. Enriquez relayed that Ms. Zimmerman had to have a meeting with a new employee, Emily Kose, hired on as a deputy to Mr. Speight in the Programs office, in order to get her deserved promotion.

105. Ms. Zimmerman asked Ms. Enriquez why a person who was not with the company during the period of performance being reviewed would have any say in Ms. Zimmerman's promotion.

106. Ms. Enriquez expressed that it was a demand from Mr. Finger and Mr. Speight and would be the final hoop to jump through to get her deserved promotion.

107. Ms. Zimmerman had a difficult time getting responses from Ms. Kose to schedule a meeting.

108.   On or about September 24, 2020, Ms. Zimmerman was on vacation exhausted from the ongoing targeting and harassment. On a phone call, CEO, Mr. Anderson demanded the importance of Ms. Zimmerman meeting with Ms. Kose and insisted she meet with Ms. Kose during Ms. Zimmerman's vacation.

109.   During Ms. Zimmerman's vacation, she met with Ms. Kose at an offsite restaurant for a one-on-one meeting in order to fulfill the requirement.  Ms. Kose told Ms. Zimmerman that Ms. Zimmerman was an exceptional leader and proposed Ms. Zimmerman work directly under Ms. Kose in the programs department. Ms. Kose insisted that Ms. Zimmerman could improve her relationship with Mr. Finger and Mr. Speight by "stroking their egos" and "pretending they are the smartest person in the meeting." Ms. Kose explains that manipulation will work and it is not sexist because "it's literally how male brains work".  Ms. Kose suggested that men be treated differently because of their gender.

110.   Ms. Zimmerman had a debrief with Mr. Anderson and explained she did not feel comfortable following Ms. Kose's direction.

111.   Despite Ms. Zimmerman's meeting with Ms. Kose, Ms. Zimmerman's promotion was still delayed.

112.   Mr. Finger and Mr. Speight's targeting and harassment of Ms. Zimmerman continued.

113.   The chief executive officer and others acknowledged that Ms. Zimmerman was being targeted and, upon information and belief, no action was taken by Paragon to stop this treatment of Ms. Zimmerman.

114.    Due to the extreme harassment and hostile work conditions at Paragon, Ms. Zimmerman informed Paragon that she would need to leave Paragon if these issues were not addressed.

115.    On December 2, 2020, Ms. Zimmerman was informed that during a meeting with Paragon's top management and board of directors, Ms. Zimmerman's managers targeted her and spoke negatively of Ms. Zimmerman's performance and announced that all communication attempts to reach Ms. Zimmerman were unaffected.

116.    This was not true as management had not attempted to communicate with Ms. Zimmerman and her performance continued to be exceptional.

117.    On December 2, 2020, Ms. Zimmerman was constructively discharged from Paragon due to the fact that the work conditions for her remained hostile and the harassment continued, even after her repeated efforts to resolve the issues with H.R. and the C.E.O. of the company.

118.    Ms. Zimmerman formalized a Charge of Discrimination on December 8, 2020, with the EEOC, citing both sex discrimination and retaliation. A true and correct copy of the Charge is attached as **Exhibit A**.

119.    The EEOC issued its Notice of Suit Rights for the charge on January 28, 2021 and received on February 1, 2021. A true and correct copy of the Notice is attached as **Exhibit D**.

//

//

## COUNT ONE
### TITLE VII - UNLAWFUL GENDER DISCRIMINATION

120.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

121.    Ms. Zimmerman is a member of a protected class.

122.    As early as October 2017, Ms. Zimmerman began to be targeted and treated differently because of her gender by Paragon and its employees and these actions continued up through the time that Ms. Zimmerman was constructively discharged from Paragon.

123.    Mr. Parker, Mr. Branch, Mr. Finger, and Mr. Speight verbally harassed Ms. Zimmerman and otherwise singled her out and treated her differently than other co-workers due to her gender.

124.    There are no legitimate nondiscriminatory reasons for these actions.

125.    Defendant, through its agents, have engaged in unlawful discriminatory actions due to Plaintiff's gender with respect to her terms, conditions, privileges, and opportunities of employment in violation of Title VII.

126.    These continued actions have caused severe emotional distress and financial hardship in amounts to be proven at trial.

## COUNT TWO
### TITLE VII - UNLAWFUL RETALIATION

127.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

18

128.    Following enduring the discriminatory treatment at the hands of Paragon workers, Ms. Zimmerman reported their actions to H.R. and CEO, Mr. Anderson.

129.    After and because of these reports, Ms. Zimmerman was consistently targeted and was denied promotions and other opportunities.

130.    Defendants, through its agents, have engaged in unlawful retaliatory actions in violation of Title VII.

131.    These continued actions have caused severe emotional distress and financial hardship in amounts to be proven at trial.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.    For compensatory, nominal, general, incidental, consequential, and punitive damages as permitted by law.

B.    For interest at the highest rate allowed by law from the earliest time permitted by law until the judgment is paid in full;

C.    For prejudgment and post-judgment interest in the highest amount allowed by law; and,

D.    For such other and further relief as may be just and proper in law and equity.

//

//

//

RESPECTFULLY SUBMITTED this 29th day of April, 2021.

COPPER CANYON LAW, LLC

*/s/ Thomas Brown*
Thomas Brown
43 East 1st Ave
Mesa, AZ  85210
*Attorney for Plaintiff*

Exhibit A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2021-00792 |

and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Brittany Zimmerman** | **(715) 639-5989** | **11/27/1989** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **2301 West Holladay** | **Tucson, AZ 85746** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Paragon Space Development Corporation** | **101-200** | **(520) 903-1000** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **3481 E. Michigan St.** | **Tucson, AZ 85714** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **3/01/2020**   Latest **6/11/2020**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Ms. Brittany Zimmerman began working with Paragon Space Development Corporation ("Paragon") on November 14, 2016. Brittany has been a top performing engineer for the role which she was hired. Additionally, she has taken on significant responsibilities in generating inventions which the company has patented, writing proposal which produce millions of dollars in revenue, and is overseeing multiple NASA programs where she leads teams of engineers which help bring those patents to the space industry. Throughout her time with Paragon, she has experienced consistent, blatant, and deliberate discrimination based on her sex and retaliation from management for reporting this discrimination.

Brittany's first review (RER) was held on October 17th, 2017 where Barry Finger, Chief Engineer and Brittany's superior, as well as other mangers, reviewed that she was exceeding expectations. Robert Parker was an independent contractor that frequently interacted with Brittany. Mr. Parker would make comments that degraded women and even made comments as outrageous as stating he had raped someone and that doing so was the only way to truly get a woman's respect. Brittany had multiple conversations with Nerya Enriquez, Paragon's Human Resources Department, regarding Mr. Parkers behavior. Neyra instructed that Brittany discuss the issues with Barry Finger. On October 20, 2017, just 3 days after her exceeding expectations review, she called and informed Barry of the issues. She filed a formal complaint of Robert's continued comments to Nerya, on October 25, 2017. Instead of addressing this significant issue, Barry Finger and Neyra Enriquez elected to renew Mr. Parker's contract with Paragon and the hostile comments toward Brittany worsened.

Roughly 6 days after her complaint to HR, on November 1, 2017, Brittany met with Barry during a meeting to discuss a promotion and raise that was previously agreed upon. Barry at this time denied the promotion despite having rated her as exceeding expectations only days prior, stating exceeding expectations was documented but the agreed upon promotion was not properly documented and that it would be readdressed on May 1, 2018. After May, Brittany requested her review meeting on multiple occasions to which Barry responded he would set something up, never following through. After many attempts to reassess her promotion, she finally got her promotion begrudgingly in August of 2018.

This decision to withhold the promotion for 9 months was clearly connected to Ms. Zimmerman's report to human resources. This was when Brittany Zimmerman first recognized retaliation for reporting the sex discrimination and this retaliation has been ongoing since this time.

On or about June 19, 2018, Mr. Parker's contract was finally terminated, reason is unknown, but as he left the office he yelled in an obvious reference to Brittany Zimmerman, "Where is the stupid red headed bitch?" and went to her desk calling her a cunt while she was on the phone with customers. Brittany left the building through the back door and headed toward her car as she did not feel safe. Mr. Parker was also in the parking lot where it appeared, he was waiting for Brittany. She hid behind a dumpster as Robert threatened to rape her. She ran to the side of the building and was able to gain entry back into Paragon. A fellow coworker witnessed this and offered to walk Brittany Zimmerman to her car. Robert Parker saw them approach and yelled vulgar comments at Brittany. Recognizing the danger, her colleague offered to ride with her to make sure she was not followed. Brittany informed Neyra, and later that evening Brittany emailed Barry Finger and Nerya requesting she work from home because she didn't feel safe at work as Robert's employment was still scheduled for the rest of the week. Barry and Neyra agreed.

On or about June 26, 2018, Brittany emailed the CEO, Grant Anderson, the CFO, Joel Johnson, and Barry Finger describing how the culture and lack of leadership addressing these issues in the office was promoting a hostile work environment.

At the beginning of 2020, Josh Hecht was pulling together the team for the HALO Program. The program that would keep people alive on the upcoming moon missions. Josh wanted Brittany to be in the lead technical position, a pinnacle opportunity for anyone in the space community. In response to this, Barry Finger asked Josh if he really wanted her in that role. Josh insisted that he had worked with Brittany on other big programs and that he was sure he wanted her in the position. Instead of allowing Brittany to take the position, Barry Finger split the position into two positions: system engineer for Brittany and chief engineer for the new hire, Robert Newman.

At this time, Pat Branch, was brought in to work under Brittany and Mr. Newman. During his first days, Pat Branch made comments to Brittany, that she must be some sort of a prodigy kid to be her age and overseeing him, that he shouldn't be reporting to her, and began mocking her title and position in front of the team. In order to complete the program, they needed to hire additional engineers, so they began taking resumes for the additional positions. Brittany reached out to some highly qualified candidates she knew and told them about the opportunity and to use her as a referral. Brittany recognized that none of her recommendations were getting interviews, which bewildered her. To test if it was related to her recommendation, she had someone submit their resume and not reference her- they were offered an interview although they were less qualified than those who had not received callbacks. It is believed that Barry Finger was responsible for this as he oversees the interview selections. This was damaging to Brittany's reputation. Pat Branch's harassment of Brittany escalated over time and on January the 27, 2020, Pat Branch defamed Brittany when he interjected with a lie about Brittany's performance during an all-hands company-wide meeting. Barry laughed and quickly moved to the next subject. Approximately one week later, Barry Finger announced to the program management team that he was promoting Pat Branch into a position in the Chief Engineer's Office, a position just below Barry's, stating he was overqualified to work in his current position, under Brittany. The very next day, February 5, 2020, Pat Branch made a comment in front of several individuals, including Neyra and other members of human resources, stating that Ms. Zimmerman only puts in recommendations for people she is sleeping with. Of course, this was not true. HR did not do anything following Pat Branch's comment. In the following program management meeting, Barry Finger and Garland Speight, discussed in front of all program managers that Josh should feel comfortable removing Brittany from the position when she makes any mistake. Recognizing her superiors were hoping she would make a mistake and that they would not work with her through obstacles, Brittany contacted her CEO, Grant Anderson. Brittany expressed concerns about Barry and Garland setting her up for failure and promoting aggressive culture against her. Grant agreed to help Brittany step down from the position "politically". Grant instructed Brittany to use her love of her inventions and other programs as reason for stepping down.

In March, after Brittany Zimmerman had stepped down from the highest position of her career in order to avoid sexual discrimination and retaliation, Brittany was still helping the HALO team achieve their milestones. During a vendor meeting, Brittany made the comment that an individual had offered her a job, Pat Branch made the comment in front of a client and Brittany's team, stating that he knew what kind of "job" he would offer a girl like Brittany. That same day Brittany sent an email to the CEO, Grant Anderson letting him know about her concerns with HR and that she needed help filing official sexual harassment complaints against Pat Branch. After this, Paragon finally retained a lawyer to investigate the harassment. The final incident was so offensive it was independently reported to the HR department which surfaced during the lawyer's investigation. The executive team asked Brittany to continue working with Pat Branch despite the sexual harassment, she refused. The management team stated that they would update Brittany every

day; however, outside of the scheduled interviews by the lawyer, no communication occurred with Brittany about the topic. On April 8, 2020, Pat Branch went to the office to collect his belongings. It is unknown as to if he was fired, forced to work at home, or quit.

After Pat Branch, the level of retaliation increased significantly under Barry Finger and Garland Speight, the two individuals directly over Brittany Zimmerman.  From that time to today, they have continuously harassed Brittany Zimmerman and made her job as difficult as possible.  The following are additional examples:

- In May 2020, Brittany had her third RER (review) and Barry Finger chose not to promote her. She had been performing the role for which she was not promoted for over a year.  She asked Barry why she was not being promoted to which he had no valid reason.  This promotion was denied despite the fact she had been very successful in the programs she oversaw and despite the fact that a promotion had been promised the previous year, when NASA selected Brittany as the youngest Principal Investigator at Paragon.
- A proposal was due to NASA on May 25, 2020. Barry told Brittany that she was not to be on the team that wrote the report and to focus on other programs. Brittany handed off the responsibility in a meeting with Grant, the Business Development Lead, and colleagues.  She focused on other programs as directed. As the deadline came closer, Barry blamed Brittany for not having the report ready on time and not getting it filed.  Brittany took the time to present a new proposal to address NASA's concern since the original proposal was not submitted. Brittany received a great response from both Grant and her NASA customer.  After Brittany finished the new report, Barry claimed that Brittany stole his idea and additionally would not approve funding for it. Grant Anderson had to intervene and approve the funding.  This is just an example of how Barry Finger continuously makes work difficult for Brittany Zimmerman.
- In June 2020, Brittany had her fourth RER scheduled with Barry and Garland.  Despite it being her highest performing year, Barry and Garland wrote poor reviews for Brittany even going as far as stating she stole inventions from an individual in the industry.  To investigate, Grant contacted the person Barry and Leslie claimed Brittany was stealing credit from.  The individual confirmed that credit was undisputedly Brittany's and the claims were false. There was no consequence for this written slander which directly impacted Brittany's career.  Brittany canceled the RER meeting after receiving their reviews, but Barry went to HR and reported her for unprofessional behavior for missing the meeting. Brittany sent another email to Grant regarding the company culture. Neyra and Barry, who are Paragon's upper management, agreed to strike Garlands comments from the written review and remove him from the in-person RER meeting.  On June 18, 2020, Brittany attended the RER, where she found that she was tricked, Garland was invited and in attendance, and his comments remain on her review to this day. Barry continues to refuse to give Brittany exceeding expectations review level.
- An employee, Thomas, was a strong advocate for Brittany.  Prior to advocating for Brittany, he was the top performing employee and had a great relationship with Barry and management.  He left Paragon in August after stating he could no longer handle the harassment he was enduring. In Thomas's absence, Brittany was the obvious choice for PI on the projects that Thomas was leaving behind, as she was the only other inventor of the technologies (different inventions than any previously discussed).  Additionally, she had been performing the PI tasks for the duration of both programs. Barry and Garland worked so that Brittany did not get the PI positions, which are the highest technical position on any space R&D program. Brittany presented approved documents and math showcasing how performance would not be an issue.  Even after seeing and agreeing with the logic, Garland and Barry, claimed they still didn't want Brittany in the position and when asked for reasoning, they were unable to provide comment outside of it being a gut feeling that contradicted all available data. Grant Anderson stepped in and put her in the PI role, showcasing that obvious missteps were again occurring that Grant was attempting to correct. Since becoming the PI, Barry has created strict rules/process for Brittany to follow that were not previously required. In front of customers, he says her program is not writing notes properly and not following procedures even though no procedures for this existed.  When pointed out, Barry and Garland worked to produce policies and procedures that made this a new requirement.  Other employees and PIs are not targeted in the same way.  Grant Anderson, Emily Kose, and other employees have acknowledged that Brittany Zimmerman has been targeted.
- Barry and Garland have cancelled meetings and taken other actions, all in attempt to make Brittany look bad in front of clients.

Paragons actions constitute discrimination and retaliation under Title VII of the Civil Rights Act of 1991 (as Amended).

NOTARY – When necessary for State and Local Agency Requirements

cooperate fully with them in the processing of my charge in accordance with their I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

12-19-2020    *Brittany Zimmerman*

Date    Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

Case 4:21-cv-00881-LGK   Document 1   Filed 07/29/21   Page 25 of 32

540-2021-00792

Exhibit B

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Brittany Zimmerman<br>2301 W. Holladay St.<br>Tucson, AZ 85746 | From: | Phoenix District Office<br>3300 North Central Ave<br>Suite 690<br>Phoenix, AZ 85012 |
|---|---|---|---|

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 540-2021-00792 | Patricia A. Miner,<br>Supervisory Investigator | (602) 661-0040 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Elizabeth Cadle,
District Director

01/28/2021

*(Date Issued)*

Enclosures(s)

cc: | Neyra Enriquez<br>Director of HR<br>PARAGON SPACE DEVELOPMENT CORPORATION<br>3481 E. Michigan St.<br>Tucson, AZ 85714 | Thomas Brown, Esq.<br>COPPER CANYONE LAW<br>43 E. 1st Ave.<br>Mesa, AZ 85210 |

Enclosure with EEOC
Form 161-B (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>**within
90 days**</u> of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or
record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you
did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was
*issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
<u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

and EEOC

_____

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)*<br>**Ms. Brittany Zimmerman** | Home Phone *(Incl. Area Code)*<br>**(715) 639-5989** | Date of Birth<br>**11/27/1989** |
|---|---|---|
| Street Address<br>**2301 West Holladay** | City, State and ZIP Code<br>**Tucson, AZ 85746** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**Paragon Space Development Corporation** | No. Employees, Members<br>**101-200** | Phone No. *(Include Area Code)*<br>**(520) 903-1000** |
|---|---|---|
| Street Address<br>**3481 E. Michigan St.** | City, State and ZIP Code<br>**Tucson, AZ 85714** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest **3/01/2020**    Latest **6/11/2020**<br><br>☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Ms. Brittany Zimmerman began working with Paragon Space Development Corporation ("Paragon") on November 14, 2016. Brittany has been a top performing engineer for the role which she was hired. Additionally, she has taken on significant responsibilities in generating inventions which the company has patented, writing proposal which produce millions of dollars in revenue, and is overseeing multiple NASA programs where she leads teams of engineers which help bring those patents to the space industry. Throughout her time with Paragon, she has experienced consistent, blatant, and deliberate discrimination based on her sex and retaliation from management for reporting this discrimination.

Brittany's first review (RER) was held on October 17th, 2017 where Barry Finger, Chief Engineer and Brittany's superior, as well as other mangers, reviewed that she was exceeding expectations. Robert Parker was an independent contractor that frequently interacted with Brittany. Mr. Parker would make comments that degraded women and even made comments as outrageous as stating he had raped someone and that doing so was the only way to truly get a woman's respect. Brittany had multiple conversations with Nerya Enriquez, Paragon's Human Resources Department, regarding Mr. Parkers behavior. Neyra instructed that Brittany discuss the issues with Barry Finger. On October 20, 2017, just 3 days after her exceeding expectations review, she called and informed Barry of the issues. She filed a formal complaint of Robert's continued comments to Nerya, on October 25, 2017. Instead of addressing this significant issue, Barry Finger and Neyra Enriquez elected to renew Mr. Parker's contract with Paragon and the hostile comments toward Brittany remained.

Roughly 6 days after her complaint to HR, on November 1, 2017, Brittany met with Barry during a meeting to discuss a promotion and raise that was previously agreed upon. Barry at this time denied the promotion despite having rated her as exceeding expectations only days prior, stating exceeding expectations was documented but the agreed upon promotion was not properly documented and that it would be readdressed on May 1, 2018. After May, Brittany requested her review meeting on multiple occasions to which Barry responded he would set something up, never following through. After many attempts to reassess her promotion, she finally got her promotion begrudgingly in August of 2018.

This decision to withhold the promotion for 9 months was clearly connected to Ms. Zimmerman's report to human resources. This was when Brittany Zimmerman first recognized retaliation for reporting the sex discrimination and this retaliation has been ongoing since this time.

On or about June 19, 2018, Mr. Parker's contract was finally terminated, reason is unknown, but as he left the office he yelled in an obvious reference to Brittany Zimmerman, "Where is the stupid red headed bitch?" and went to her desk calling her a cunt while she was on the phone with customers. Brittany left the building through the back door and headed toward her car as she did not feel safe. Mr. Parker was also in the parking lot where it appeared, he was waiting for Brittany. She hid behind a dumpster as Robert threatened to rape her. She ran to the side of the building and was able to gain entry back into Paragon. A fellow coworker witnessed this and offered to walk Brittany Zimmerman to her car. Robert Parker saw them approach and yelled vulgar comments at Brittany. Recognizing the danger, her colleague offered to ride with her to make sure she was not followed. Brittany informed Neyra, and later that evening Brittany emailed Barry Finger and Nerya requesting she work from home because she didn't feel safe at work as Robert's employment was still scheduled for the rest of the week. Barry and Neyra agreed.

On or about June 26, 2018, Brittany emailed the CEO, Grant Anderson, the CFO, Joel Johnson, and Barry Finger describing how the culture and lack of leadership addressing these issues in the office was promoting a hostile work environment.

At the beginning of 2020, Josh Hecht was pulling together the team for the HALO Program. The program that would keep people alive on the upcoming moon missions. Josh wanted Brittany to be in the lead technical position, a pinnacle opportunity for anyone in the space community. In response to this, Barry Finger asked Josh if he really wanted her in that role. Josh insisted that he had worked with Brittany on other big programs and that he was sure he wanted her in the position. Instead of allowing Brittany to take the position, Barry Finger split the position into two positions: system engineer for Brittany and chief engineer for the new hire, Robert Newman.

At this time, Pat Branch, was brought in to work under Brittany and Mr. Newman. During his first days, Pat Branch made comments to Brittany, that she must be some sort of a prodigy kid to be her age and overseeing him, that he shouldn't be reporting to her, and began mocking her title and position in front of the team. In order to complete the program, they needed to hire additional engineers, so they began taking resumes for the additional positions. Brittany reached out to some highly qualified candidates she knew and told them about the opportunity and to use her as a referral. Brittany recognized that none of her recommendations were getting interviews, which bewildered her. To test if it was related to her recommendation, she had someone submit their resume and not reference her- they were offered an interview although they were less qualified than those who had not received callbacks. It is believed that Barry Finger was responsible for this as he oversees the interview selections. This was damaging to Brittany's reputation. Pat Branch's harassment of Brittany escalated over time and on January the 27, 2020, Pat Branch defamed Brittany when he interjected with a lie about Brittany's performance during an all-hands company-wide meeting. Barry laughed and quickly moved to the next subject. Approximately one week later, Barry Finger announced to the program management team that he was promoting Pat Branch into a position in the Chief Engineer's Office, a position just below Barry's, stating he was overqualified to work in his current position, under Brittany. The very next day, February 5, 2020, Pat Branch made a comment in front of several individuals, including Neyra and other members of human resources, stating that Ms. Zimmerman only puts in recommendations for people she is sleeping with. Of course, this was not true. HR did not do anything following Pat Branch's comment. In the following program management meeting, Barry Finger and Garland Speight, discussed in front of all program managers that Josh should feel comfortable removing Brittany from the position when she makes any mistake. Recognizing her superiors were hoping she would make a mistake and that they would not work with her through obstacles, Brittany contacted her CEO, Grant Anderson. Brittany expressed her concerns about Barry and Garland setting her up for failure and promoting aggressive culture against her. Grant agreed to help Brittany step down from the position "politically". Grant instructed Brittany to use her love of her inventions and other programs as reason for stepping down.

In March, after Brittany Zimmerman had stepped down from the highest position of her career in order to avoid sexual discrimination and retaliation, Brittany was still helping the HALO team achieve their milestones. During a vendor meeting, Brittany made the comment that an individual had offered her a job, Pat Branch made the comment in front of a client and Brittany's team, stating that he knew what kind of "job" he would offer a girl like Brittany. That same day Brittany sent an email to the CEO, Grant Anderson letting him know about her concerns with HR and that she needed help filing official sexual harassment complaints against Pat Branch. After this, Paragon finally retained a lawyer to investigate the harassment. The final incident was so offensive it was independently reported to the HR department which surfaced during the lawyer's investigation. The executive team asked Brittany to continue working with Pat Branch despite the sexual harassment, she refused. The management team stated that they would update Brittany every

day; however, outside of the scheduled interviews by the lawyer, no communication occurred with Brittany about the topic. On April 8, 2020, Pat Branch went to the office to collect his belongings. It is unknown as to if he was fired, forced to work at home, or quit.

After Pat Branch, the level of retaliation increased significantly under Barry Finger and Garland Speight, the two individuals directly over Brittany Zimmerman. From that time to today, they have continuously harassed Brittany Zimmerman and made her job as difficult as possible. The following are additional examples:

- In May 2020, Brittany had her third RER (review) and Barry Finger chose not to promote her. She had been performing the role for which she was not promoted for over a year. She asked Barry why she was not being promoted to which he had no valid reason. This promotion was denied despite the fact she had been very successful in the programs she oversaw and despite the fact that a promotion had been promised the previous year, when NASA selected Brittany as the youngest Principal Investigator at Paragon.
- A proposal was due to NASA on May 25, 2020. Barry told Brittany that she was not to be on the team that wrote the report and to focus on other programs. Brittany handed off the responsibility in a meeting with Grant, the Business Development Lead, and colleagues. She focused on other programs as directed. As the deadline came closer, Barry blamed Brittany for not having the report ready on time and not getting it filed. Brittany took the time to present a new proposal to address NASA's concern since the original proposal was not submitted. Brittany received a great response from both Grant and her NASA customer. After Brittany finished the new report, Barry claimed that Brittany stole his idea and additionally would not approve funding for it. Grant Anderson had to intervene and approve the funding. This is just an example of how Barry Finger continuously makes work difficult for Brittany Zimmerman.
- In June 2020, Brittany had her fourth RER scheduled with Barry and Garland. Despite it being her highest performing year, Barry and Garland wrote poor reviews for Brittany even going as far as stating she stole inventions from an individual in the industry. To investigate, Grant contacted the person Barry and Leslie claimed Brittany was stealing credit from. The individual confirmed that credit was undisputedly Brittany's and the claims were false. There was no consequence for this written slander which directly impacted Brittany's career. Brittany canceled the RER meeting after receiving their reviews, but Barry went to HR and reported her for unprofessional behavior for missing the meeting. Brittany sent another email to Grant regarding the company culture. Neyra Kose, who are Paragon's upper management, agreed to strike Garlands comments from the written review and remove him from the in-person RER meeting. On June 18, 2020, Brittany attended the RER, where she found that she was tricked, Garland was invited and in attendance, and his comments remain on her review to this day. Barry continues to refuse to give Brittany exceeding expectations review level.
- An employee, Thomas, was a strong advocate for Brittany. Prior to advocating for Brittany, he was the top performing employee and had a great relationship with Barry and management. He left Paragon in August after stating he could no longer handle the harassment he was enduring. In Thomas's absence, Brittany was the obvious choice for PI on the projects that Thomas was leaving behind, as she was the only other inventor of the technologies (different inventions than any previously discussed). Additionally, she had been performing the PI tasks for the duration of both programs. Barry and Garland worked so that Brittany did not get the PI positions, which are the highest technical position on any space R&D program. Brittany presented approved documents and math showcasing how performance would not be an issue. Even after seeing and agreeing with the logic, Garland and Barry, claimed they still didn't want Brittany in the position and when asked for reasoning, they were unable to provide comment outside of it being a gut feeling that contradicted all available data. Grant Anderson stepped in and put her in the PI role, showcasing that obvious missteps were again occurring that Grant was attempting to correct. Since becoming the PI, Barry has created strict rules/process for Brittany to follow that were not previously required. In front of customers, he says her program is not writing notes properly and not following procedures even though no procedures for this existed. When pointed out, Barry and Garland worked to produce policies and procedures that made this a new requirement. Other employees and PIs are not targeted in the same way. Grant Anderson, Emily Kose, and other employees have acknowledged that Brittany Zimmerman has been targeted.
- Barry and Garland have cancelled meetings and taken other actions, all in attempt to make Brittany look bad in front of clients.

Paragons actions constitute discrimination and retaliation under Title VII of the Civil Rights Act of 1991 (as Amended).

| cooperate fully with them in the processing of my charge in accordance with their | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| 12-19-2020 _Brittany Zimmerman_ <br> Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE <br> (month, day, year) |